

**ORDERED in the Southern District of Florida on August 10, 2012.**

A. Jay Cristol, Judge
United States Bankruptcy Court

_____

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF FLORIDA

In re:

MARTHA RAMOS,

      Debtor,
_____/

MARTHA RAMOS,

      Debtor/Plaintiff,

vs.

INVERSIONES PELICAN, S.A., et al

      Creditor/Defendant.
_____/

Case No. 11-11361-BKC-AJC
Chapter 7

Adv. No. 11-3127-BKC-AJC-A

**FINAL JUDGMENT DETERMINING DEBT OWED BY DEBTOR AND RELATED BUSINESS ENTITIES IS NON-DISCHARGEABLE AND IMPOSING EQUITABLE MORTGAGE LIEN ON DEBTOR'S REAL PROPERTY INTEREST**

THIS CAUSE came on before the Court for a Pre-Trial hearing on July 23, 2012 on the Debtor's *Amended Complaint to Determine Dischargeability of Debt* (the "Complaint"). At the

pre-trial conference, the parties to this action agreed that the underlying debt in this case – the debt owed by Martha Ramos (including Ramos' interests in Mercury Investments, S.A. and Mercury Investment Group) is non-dischargeable and not affected by the Debtor's filing of the instant bankruptcy case and adversary proceeding.  However, the Defendants in this action (Inversiones Pelican, S.A. and the related defendants) seek the imposition of a equitable mortgage lien as against the Debtor's real property interest located at 11521 S.W. 80th Terrace, Miami, Florida.  Debtor's counsel disputes the imposition of such equitable lien.  At the conclusion of the pre-trial hearing, this Court requested the submission of competing Final Judgments for further consideration.  Upon review of the proposed Final Judgments and the subject Settlement Term Sheet executed by the parties, the Court grants Defendants' request for the imposition of a second mortgage lien.

Martha Ramos, (the "Debtor") filed a voluntary Chapter 7 case on January 19, 2011 received her discharge on May 13, 2011.  The Chapter 7 bankruptcy case was closed that same date.

On December 14, 2011, the Debtor filed a motion to re-open her bankruptcy case to include additional creditors.  On December 28, 2011, the Debtor filed the instant Complaint to determine the dischargeability of any debt owed.

Prior to the scheduled pre-trial conference, the parties agreed to submit the matter to mediation; and, on May 23, 2012, the parties attended a mediation conference with James Harris Fierberg, Esq. serving as mediator.  On May 24, 2012, the Mediator filed his report (DE #26) that the matter had been settled through the mediation conference.

A Settlement Term Sheet between the parties was prepared and signed at the May 23, 2012 mediation conference.   It is undisputed that the Settlement Term Sheet was prepared by the Mediator and counsel for the parties, who appeared at the mediation.  It was reviewed by all of

the parties in attendance and was signed by each of the parties and their counsel at the conclusion of the mediation conference.

In summary, the essential terms of the Settlement Term Sheet now at issue provide that Pelican shall have a non-dischargeable judgment against Ramos and her interest in other related business entities, in the amount of $100,000, and further provides a basis for payment terms. The Settlement Term Sheet allows for a non-dischargeable judgment to be recorded upon the occurrence of a default of any payments on this obligation. The Settlement Term Sheet also provides that Pelican shall be granted a second mortgage on Ramos' property located at 11521 SW 80th Terrace, Miami, Florida, for the full amount of their claim, (ie. $167,423.64) with Ramos to execute and return the second mortgage within 5 days of her receipt of same from Pelican's counsel. Pelican, however, was not to take any action on this second mortgage, other than the recording of same, as long as Ramos was not in default under the terms set forth.

Thereafter, the Debtor refused to execute and return the second mortgage documents.

Debtor's counsel now submits that the Debtor has indeed defaulted under the terms of the Settlement Term Sheet and agrees a non-dischargeable judgment for $100,000 should be entered as against this Debtor in favor of Pelican, but disagrees with Pelican that it is entitled to the imposition of a second mortgage on the Debtor's real property interests as contemplated by paragraph 6 of the Settlement Term Sheet.

The enforcement of settlement agreements are governed by state contract law. *See In re Chira*, 567 F.3d 1307, 1311 (11th Cir. 2009). Generally, only improper influence from the other contracting party suffices to set aside a settlement agreement on the basis of fraud, duress or coercion. In interpreting contracts, the Court need look to the intent of the parties as expressed

in the documents and, unless there is duress or coercion involved, the agreement is enforceable. In the instant case, the parties were each represented by counsel, the agreement was negotiated and the terms agreed to during the structured mediation conference. In the instant case, there have been no allegations that the Debtor was subject to any coercion or duress; in fact, Debtor's counsel concedes that the Debtor has defaulted under the terms of the agreement - thereby acknowledging the existence of a valid agreement between the parties *ab initio*.

The specific language of the Settlement Term Sheet states that "Pelican *shall be granted* a second mortgage on Ramos' property located at 11521 SW 80th Terrace, Miami, Florida in the full amount of their claim ($167,423.64)". There is nothing ambiguous in the language of the Settlement Term Sheet. There are no conditions that must first occur. The language is clear that there is an intent to grant Pelican a second mortgage by virtue of the Settlement Term Sheet.

The Court notes that the Debtor has listed this parcel of real property in her bankruptcy schedules, with no remaining equity value. The Debtor has not claimed this property interest as exempt and has expressed in the Statement of Intention the Debtor's intent to surrender same. Thus, it appears the Debtor will not be any worse off by giving effect to this second mortgage than if she does not.

A lien created by contract, and not sufficient as a legal mortgage, is generally regarded as in the nature of an equitable mortgage. The form of the contract is immaterial, provided the intent to create a security appears. *Atlantic Federal Sav & Loan Assn of Fort Lauderdale v. Kitimat Corp*. 143 So.2d 719, 721 (Fla. 2d DCA 1962) citing *Holmes v. Dunning*, 101 Fla. 55 (1931). Equitable liens may arise by operation of law from the conduct of the parties, or from a variety of transactions to which equity will cause them to attach. *Id. at 722* citing *Phelps v. Higgins*, 120

So. 2d 633 (Fla. 2d DCA 1960). There are two sources from which equitable liens may arise: (1) written contracts showing an intent to charge some particular property with a debt or obligation, and (2) when declared by an equity court out of general consideration of right and justice as applied to the relations of the parties and the circumstances of their dealings in the particular case. *Id.* citing *Tucker v. Prevatt Builders, Inc.*, 116 So.2d 437 (Fla. 2d DCA 1959). Here it is clear that at the time of the creation of the Settlement Term Sheet as between the parties, at the mediation conference, it was contemplated and anticipated that Pelican would be granted a second mortgage against Debtor's property, as security for the payments envisioned by the agreement.

This Court, as a court of equity, has the ability to determine the existence of and to enforce the terms of an equitable lien – the second mortgage on the Debtor's real property located at 11521 SW 80th Terrace, Miami, Florida in the full amount of the debt. Under the circumstances of this case, the imposition of an equitable lien is appropriate. Accordingly, it is

ORDERED and ADJUDGED that Judgment in this case is entered in favor of Inversiones Pelican, S.A. as follows:

1. Inversiones Pelican, S.A. shall have a non-dischargeable judgment against Martha Ramos, Mercury Investments, S.A. and Mercury Investments Group, in the amount of $100,000.

2. Inversiones Pelican, S.A. is granted a second mortgage as an equitable lien against real property located at 11521 S.W. 80th Terrace, Miami, Florida, in the amount of $167,423.64; and this Final Judgment shall serve as the conveyance of this equitable lien, which Pelican may record and on which Pelican may execute, as Pelican deems appropriate.

\* \* \*

Submitted by:

D. Jean Ryan, Esq.
Ryan Law Firm, P.A.
Attorneys for Defendants
8500 S.W. 92nd Street, Suite 202
Miami, Florida 33156
Telephone: (305) 275-2733
Facsimile: (305) 275-2733
Email: Jryan@Ryanlawpa.com

Copies furnished to:

Office of the U.S. Trustee
Debtor
Counsel for the Plaintiff
Defendants

Attorney Ryan is directed to serve copies of this Final Judgment on the parties listed and to file a certificate of service with the Court.